**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GLENN MARTIN, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:24-CV-01150 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MASTER-HALCO, INC. | : | MARCH 23, 2026 |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 33)**

**I.      INTRODUCTION**

The plaintiff, Glenn Martin ("Mr. Martin"), brings this suit alleging disability discrimination, retaliation, and failure to accommodate in violation of both the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. 12101 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA") General Statutes § 46a-60 et seq., against his employer Master-Halco, Inc. ("Master-Halco"). See generally Amended Complaint ("Am. Comp.") (Doc. No. 22).

Before the court is Master-Halco's Motion for Summary Judgment. See Defendant's Motion for Summary Judgment ("Mot.") (Doc. No. 33). Mr. Martin opposes the Motion. See Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Opp.") (Doc. No. 36); see also Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Reply") (Doc. No. 37). For the reasons stated below, the court grants the Motion.

**II.      BACKGROUND**

Master-Halco hired Mr. Martin on or about July 7, 2022, as a full-time Inside Sales Associate in its Rocky Hill, Connecticut office. See Plaintiff's Local Rule 56(a)(2) Statement of Facts ("Rule 56(a)(2) Statement") (Doc. No. 36-2) at ¶ 1. Mr. Martin was

1

hired as an at-will employee and was assigned to handle fencing product sales by fulfilling customer orders and preparing price quotes.  Id. at ¶¶ 2, 7.

Mr. Martin reported to Branch Manager Charles Hemstock ("Mr. Hemstock.")  Id. at ¶ 8.  Mr. Hemstock issued Mr. Martin an initial 45-day performance review stating that Mr. Martin's "overall product and process knowledge needs improvement" and "Computer based skills need sharpening."  See "Employee Performance Review," Defendant's Exh. A (Doc. No. 33-2) at 53.  The performance review also noted Mr. Martin had "low production output."  Id.  The performance review outlined different goals for Mr. Martin to work on, including taking initiative to expand product knowledge.  Id. The review also noted that Mr. Martin's "willingness to learn on your own is a strength." Id.  Mr. Martin testified to other positive, encouraging comments made by Mr. Hemstock.  Defendant's Exh. A (Doc. No. 33-2) at 10.

On September 6, 2022, Mr. Martin reported to Mr. Hemstock an incident that took place with a coworker.  Rule 56(a)(2) Statement at ¶ 13.  Mr. Martin reported that his co-worker, John Ryland, became upset at Mr. Martin while training him and hit a pencil container across the room while yelling.  Id. at ¶ 14.  Master-Halco immediately placed Mr. Ryland on leave and initiated an investigation.  Id. at ¶ 15.  Mr. Ryland remained on leave until the conclusion of the investigation, after which Master-Halco terminated Mr. Ryland's employment.  Id. at ¶ 16.

On September 7, 2022, Mr. Martin sent an email to Mr. Hemstock stating, "I will not be able to make it into work tomorrow due to anxiety caused by the work environment."  Id. at ¶ 17.  Mr. Martin wrote again to Mr. Hemstock stating that he would supply a letter concerning both his missed workdays and his ability to continue to work.

Id. at ¶ 18.  On that same day, Mr. Martin emailed HR Manager Megan Morrow ("Ms. Morrow") disclosing a medical diagnosis of Complex PTSD (i.e., "CPTSD") and explained that he was not "capable of working."  Id. ¶ 19.  In this correspondence, Mr. Martin explained that the underlying symptoms of his condition were exacerbated by bullying he experienced both from Mr. Hyland "and other members of the sales team." Defendant's Exh. A (Doc. No. 33-2) at 56.

Mr. Martin also emailed Senior HR Manager Itzel Chang ("Ms. Chang") stating that he would not be at work, including in his correspondence a letter from Connecticut Valley Counseling stating that increased anxiety has caused him to miss three days of work: September 7, 8, and 9.  Rule 56(a)(2) Statement at ¶ 20.  On September 9, Ms. Chang confirmed receipt of Mr. Martin's request for the three days off and acknowledged that she understood Mr. Martin would be out of work on September 9, 2022.  Id. at ¶ 21;  Defendant's Exh. A (Doc. No. 33-2) at 60.

Later in that same email chain with Ms. Chang, Mr. Martin requested "information on workman's compensation."  Defendant's Exh. A (Doc. No. 33-2) at 60.  When Ms. Chang inquired as to the nature of Mr. Martin's injury, in response Mr. Martin stated that he "was traumatized daily at work being bullied by other staff for the entire time [he] was there."  Id. at 59.  Mr. Martin explained that, while he reported the bullying "and the original bully backed off temporarily," other coworkers started to bully him.  Id.  Mr. Martin told Ms. Chang that he was "not safe" at work.  Id.

On September 12 and 13, Mr. Martin emailed Mr. Hemstock stating that he could not return to work.  Rule 56(a)(2) Statement at ¶ 22.  On September 13, Ms. Chang sent Mr. Martin a letter stating that his last day worked was September 6, 2022 and that,

3

while he had presented a doctor's note excusing him from work through September 9, 2022, Mr. Martin had yet to return to work.  See Defendant's Exh. A at 69.  The letter stated that it was Master-Halco's "understanding that [Mr. Martin is] pursuing Short Term Disability benefits through October 8, 2022," and that Mr. Martin had inquired about FMLA and worker's compensation.  Id.  The letter also stated

> "if you are unable to return to work at this time, we will continue your unpaid leave, but we will need to hear from you by the end of this week [i.e., September 16, 2022] regarding how long you believe you will need to be out on leave and in addition, provide the appropriate doctor's excuse.  In addition, the employee about whom you made complaints is no longer employed by Master-Halco."

Id.  The letter advised Mr. Martin to provide any information as to other employees who may be impacting his ability to return to work.  Id.  In response to this letter, Mr. Martin sent a note from a health care provider, dated September 14, recommending Mr. Martin receive a "short term leave" from work.  See Plaintiff's Exh. 8 (Doc. No. 36-11).  The letter did not indicate a return-to-work date.  Id.

Mr. Martin did not supply any subsequent letters from a medical provider with a return-to-work date, nor did he request a specific, end-of-leave date.

On September 16, 2022, Mr. Martin emailed Ms. Chang stating, "I am out of work until I can do the necessary healing and receive treatment to stabilize myself.  The date and my ability to return to work at this time is undetermined."  See Defendant's Exh. A at 70.  His email went on to state that, "[a]s I am not a licensed professional, I have no way to judge how long it will take to heal."  Id.  By September 30, 2022, Mr. Martin had failed to report to work for three consecutive weeks (September 7, 2022, through September 30, 2022).  Rule 56(a)(2) Statement at ¶ 30.  By letter dated September 30,

4

2022, Ms. Chang notified Mr. Martin that Master-Halco has terminated his employment. Id. at ¶ 34; Defendant's Exh. A at 72.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

Master-Halco moves for summary judgment as to each of the six counts in Mr. Martin's Amended Complaint.  See Mot. at 1.  For the reasons set forth below, the court grants Master-Halco summary judgment as to all six counts: (1) disability discrimination in violation of the ADAAA; (2) failure to accommodate in violation of the ADAAA; (3) retaliation in violation of the ADAAA; (4) disability discrimination in violation of CFEPA;

(5) failure to accommodate in violation of CFEPA; and (6) retaliation in violation of CFEPA.

Given that CFEPA is generally coextensive with federal anti-discrimination law, Gran v. TD Bank, NA, 204 F. Supp. 3d 446, 452 (D. Conn. 2016), the court examines the counts under the three bases claimed by Mr. Martin: disability discrimination, failure to accommodate, and retaliation.[1]

A.    Disability Discrimination (Counts One and Four)

With respect to Mr. Martin's disability discrimination claims arising under both the ADAAA and CFEPA, Master-Halco argues that Mr. Martin is not a qualified individual with a disability under the law and, in the alternative, even if Mr. Martin were a qualified individual with a disability, there exists no material issue of fact as to an inference of disability discrimination by Master-Halco.

To make out a prima facie case under either the ADA or CFEPA, a plaintiff must show (1) his employer is subject to the statute; (2) he was disabled within the meaning of the statute; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001); Curry v. Allan S. Goodman, Inc., 286 Conn. 390, 426 (2008) (applying federal prima facie standards for disability discrimination to CFEPA).

---

[1]The key distinction between claims brought under the ADAAA and those arising under CFEPA turns on causation. Courts in the Second Circuit apply a but-for causation standard in evaluating ADAAA discrimination claims, while the motivating factor test is the applicable causation standard for discrimination claims arising under CFEPA. Keithan v. Lakeside Env't Consultants, LLC, 2025 WL 2053412, at *8 (D. Conn. July 22, 2025); Wallace v. Caring Sols., LLC, 213 Conn. App. 605, 626, 278 A.3d 586, 602 (2022).

Assuming, arguendo, that CPTSD qualifies as a disability under both the ADAAA and the CFEPA, Mr. Martin must demonstrate that he was able to perform the essential functions of his position with or without reasonable accommodation.[2,3] Id.  Mr. Martin has failed to raise a triable issue of fact that he could perform the essential functions of his job with or without reasonable accommodation because Mr. Martin told his employer only that he could not return to work and gave no assurances of a date or date range that he anticipated returning.

The Second Circuit has "never resolved the question of whether paid or unpaid leave can constitute a reasonable accommodation under the ADA."  Petrone v. Hampton Bays Union Free School Dist., 568 Fed.Appx. 5, 7 n.2 (2d Cir. 2014).[4]  The Second Circuit has upheld grants of summary judgment where, as here, neither the plaintiff nor his medical provider ever informed the employer of a date when plaintiff anticipated being able to return to work or indicated how long a leave of absence might

---

[2] The court notes that, in assessing whether Mr. Martin can make a prima facie showing of his ability to perform the essential functions of his position with or without reasonable accommodation as a matter of law, Mr. Martin advances no other proposed accommodation beyond the leave of absence at issue.

[3] The defendant does not argue that it does not qualify as an "employer" under the statute.

[4] Although in some instances district courts in this Circuit have held that a temporary leave of absence is a recognized accommodation under the ADA, see, e.g., Palmieri v. City of Hartford, 947 F. Supp. 2d 187, 204 (D. Conn. 2013); Hutchinson v. Ecolab, Inc., 2011 WL 4542957, at *9 (D. Conn. Sept. 28, 2011); Turner v. Delta Airlines, Inc., 658 F. Supp. 3d 123, 139 (E.D.N.Y. 2023); Durant v. Chemical/Chase Bank/Manhattan Bank, N.A., 1999 WL 1328001 (S.D.N.Y. Dec. 3, 1999), the Second Circuit has not resolved the question definitively.  See Graves v. Finch Pruyn & Co., 457 F.3d 181, 185, n. (2d Cir. 2006) ("We note, however, that the idea of unpaid leave of absence as a reasonable accommodation presents a troublesome problem, partly because of the oxymoronic anomaly it harbors— the idea that allowing a disabled employee to leave a job allows him to perform that job's functions—but also because of the daunting challenge of line drawing it presents.") (internal quotations omitted).

Furthermore, although courts in this Circuit have found that temporally defined leaves of absence may constitute a reasonable accommodation, indefinite leave is clearly not a reasonable accommodation. Mitchell v. Washingtonville Central School Dist., 190 F.3d 1, 9 (2d Cir.1999); Cousins v. Howell Corp., 113 F. Supp. 2d 262, 271 (D. Conn. 2000).

last.  Id. at 8.  Indeed, the Second Circuit has held that the ADA does not require an employer "to hold an injured employee's position open indefinitely while the employee attempts to recover."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000).  Therefore, to the extent a leave of absence could be interpreted as a reasonable accommodation, such request can only be for a finite amount of time.  Jarrell v. Hosp. for Special Care, 626 Fed.Appx. 308, 311–12 (2d Cir. 2015) (emphasis added).

By Mr. Martin's own words, it was unclear when, if ever, Mr. Martin might be able to return to work.  Mr. Martin told Ms. Chang that "the date and [his] ability to return to work at this time is undetermined."  See Defendant's Exh. A at 70.  Although Mr. Martin's application for Short Term Disability indicated October 8, 2022, as a potential end date, he supplied no medical documentation to Master-Halco, nor represented directly, that he believed he would be cleared to return to work by that date.  Indeed, the Short Term Disability application itself lists three dates (October 8, October 21, and December 6) as potential end dates for his leave, and the letter itself was dated 7 days before Mr. Martin represented to Ms. Chang that "the date and [his] ability to return to work at this time is undetermined."  Plaintiff's Exh. 4; Defendant's Exh. A at 70.  In other words, Master-Halco would have had no choice but to speculate if and when Mr. Martin could return to work.  The specter of indefinite leave is not a reasonable accommodation for purposes of disability discrimination.  Parker, 204 F.3d at 338.  For that reason alone, summary judgment is warranted as to Counts One and Four.

Even assuming Mr. Martin is a qualified individual with a disability, Mr. Martin must also come forward with evidence that his disability was either the but-for factor, for Count One, or a motivating factor, for Count Four, underlying the adverse employment

8

action he suffered.  Master-Halco cited two reasons for Mr. Martin's termination in the September 30 letter: (1) job performance issues and (2) attendance.[5]  See Defendant's Exh. A at 72.  Mr. Martin argues that, because his leave of absence resulted from his disability, terminating him on the basis of that leave raises the inference of discriminatory intent.  Opp. at 17.

The court is not persuaded.  Mr. Martin cites no evidence in the record indicating that the decision to terminate him was motivated by his disability beyond the fact that Master-Halco terminated him for failing to indicate when he could return to work.  For the same reason Mr. Martin's request for indefinite leave is fatal to establishing he is a qualified individual with a disability, so too is it fatal to showing discriminatory intent.

Because an employer is not required to hold open a position for a disabled employee indefinitely under either the CFEPA or the ADA, it follows that terminating an employee who has given no assurances of an ability to return to work is not discrimination under either of those statutes.  The court grants Master-Halco summary judgment as to Counts One and Four.

B.      Failure to Accommodate (Counts Two and Five)

The ADA and CFEPA require the same standard in analyzing failure to accommodate claims.  Martinsky v. City of Bridgeport, 504 F. App'x 43, 48 (2d Cir. 2012).  To establish a prima facie case for disability discrimination arising from a failure to accommodate, a plaintiff must show that (1) he is a person with a disability; (2) the employer was covered by the statute and had notice of his disability; (3) he was

---

[5] The court will not address the first reason, job performance, because there are significant issues of material fact as to Mr. Martin's job performance.

otherwise qualified to perform the essential functions of his job with reasonable accommodation; and (4) the employer refused such accommodation.  Id. at 47.

Mr. Martin's state and federal failure to accommodate claims suffer the same fatal defect as his disability discrimination claims in Counts One and Four: he is not a qualified individual with a disability.  To be a qualified individual with a disability, Mr. Martin must show that he could perform the essential functions of his job with a reasonable accommodation.  Id.  Indeed, this defect is dispositive on the question of whether Master-Halco failed to accommodate Mr. Martin because any theory of disability discrimination under either the ADA or CFEPA requires the plaintiff to show he is a qualified individual with a disability for purposes of each statute.  See Sieberns v. Wal–Mart Stores, Inc., 125 F.3d 1019, 1022 (7th Cir.1997) ("No matter the type of discrimination alleged—either disparate treatment or failure to provide a reasonable accommodation—a plaintiff must establish first that he was a qualified individual with a disability.")

Mr. Martin is not a qualified individual with a disability because his requested accommodation, an indefinite leave of absence, was not reasonable and therefore element three of his prima facie case fails.  Martinsky, 504 F. App'x at 47.   Therefore, there exists no triable issue of material fact that Master-Halco denied him a reasonable accommodation.  Mr. Martin requested no accommodation of Master-Halco beyond a leave of absence of indeterminate length.  Because an employer is not obligated to provide an indefinite leave of absence as a reasonable accommodation, Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000); Cousins v. Howell Corp., 113 F. Supp. 2d 262, 271 (D. Conn. 2000), Master-Halco did not fail to accommodate

10

Mr. Martin in terminating him in the absence of medical support for a certain date of return.

Indeed, the ADA contemplates an "interactive process" in which employers and employees work together to determine if and how an employee's disability may be accommodated. Tafolla v. Heilig, 80 F.4th 111, 122 (2d Cir. 2023). Both an employer and an employee are required to participate in this process. Id. The Second Circuit has recognized that where the breakdown of the interactive process was squarely the fault of the employee, a failure to accommodate claim may be deemed frivolous. Parker v. Sony Pictures Ent., Inc., 260 F.3d 100, 114 (2d Cir. 2001). Here, the record evidence shows that, when asked as to a possible return date for work, Mr. Martin told Master-Halco that both the date of, and his ability to, return to work was indeterminable. See Defendant's Exh. A at 70. Thereafter, Mr. Martin did not supply Master-Halco with any additional medical documentation indicating an accommodation that could enable him to return to work at some future date.

Even if the breakdown in the interactive process was bilateral, which is not the court's finding, the fact that Mr. Martin did not request any reasonable accommodation is fatal to his claim because an employer's putative failure to engage in an interactive process cannot form the basis of an ADA claim unless a plaintiff can show he was qualified for the position with an identified accommodation. McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 101 (2d Cir. 2009).

The court grants Master-Halco summary judgment as to Counts Two and Five.

C.      Retaliation (Counts Three and Six)

Finally, Mr. Martin brings a retaliation claim under both the ADA and CFEPA.  To establish a prima facie case of retaliation under the CFEPA and the ADA, a plaintiff must show (1) he participated in a protected activity; (2) the defendant knew of the protected activity; (3) an adverse employment action again him; and (4) a causal connection between the protected activity and the adverse employment action.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999); Ayantola v. Bd. of Trs. of Tech. Colleges, 116 Conn. App. 531, 536 (2009).  Mr. Martin argues that he engaged in a protected activity in requesting a reasonable accommodation.  Opp. at 23.  This argument fails because a request for indefinite leave is not protected activity precisely because it is not a reasonable accommodation.  See, supra, Parts IV.A, IV.B.[6]

Master-Halco provided a legitimate, non-retaliatory reason for the termination that cannot be disputed on the record evidence before the court: Mr. Martin's indefinite absence.  It is well established that a plaintiff can prove retaliation by demonstrating weakness, infirmities, or other contradictions in an employer's proffered reasons for the adverse employment action.  Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc., 265 F. Supp. 3d 179, 202 (D. Conn. 2017).  However, Mr. Martin fails to

---

[6] Furthermore, while federal courts have treated requests for reasonable accommodation as protected activity for purposes of a retaliation claim under the ADA, see Weixel v. Board of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir.2002), some Connecticut state courts have declined to read accommodation requests as protected activity for purposes of CFEPA retaliation because CFEPA enumerates specific examples of protected activities within the text of § 46a–60(b)(4), and therefore, CFEPA cannot be construed as prohibiting adverse actions against employees seeking a reasonable accommodation when that activity is not listed in the text. Dwyer v. Waterfront Enters., Inc., 2013 WL 2947907, at *11 (Conn. Super. Ct. May 24, 2013); Sheehy v. Big Y Foods, Inc., 2012 WL 5860317, at *4 (Conn. Super. Ct. Oct. 31, 2012).

However, because Connecticut courts have recently called into question this reading of protected activity under CFEPA, see Devito v. Griffin Hospital, 2024 WL 243396, at *23 (Conn. Super. Ct. Jan. 19, 2024), the court declines to rest its grant of summary judgment on that ground.

show such here.  Mr. Martin relies only on the proximity between the leave of absence and the termination as raising an inference of retaliatory intent, but this is a tautology. The termination letter itself explicitly states that Mr. Martin was terminated because of his absence.  To say that the termination was close in time to his request for a leave of indefinite absence, and therefore retaliatory, turns on such a request being a reasonable accommodation, which it is not.

The court grants summary judgment on Counts Three and Six in the absence of any issues of material fact and as a matter of law.

## V.    CONCLUSION

For the reasons stated above, the court grants the Motion for Summary Judgment (Doc. No. 33).

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of March 2026.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

13